**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| AYAH ELAYYAN b/n/f EMAD and | ) | |
| RANIA ELAYYAN, EMAD ELAYYAN, and | ) | |
| RANIA ELAYYAN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:07-CV-269-PRC |
| | ) | |
| SOL MELIA, SA (d/b/a SOL MELIA | ) | |
| HOTELS AND RESORTS), a | ) | |
| Corporation and THE SOL GROUP | ) | |
| CORPORATION | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

This matter is before the Court on (1) Defendant The Sol Group Corporation's Motion to

Dismiss [DE 16], filed by Defendant The Sol Group Corporation ("Sol Group") on April 22, 2008,

and (2) Defendant Sol Meliá, S.A.'s Motion to Dismiss [DE 19], filed by Defendant Sol Meliá, S.A.

("Sol Meliá") on April 22, 2008.  For the reasons stated below, the Court grants the motions to

dismiss.

**PROCEDURAL BACKGROUND**

On July 13, 2007, Plaintiffs Ayah Elayyan b/n/f Emad and Rania Elayyan, Emad Elayyan,

and Rania Elayyan filed a Complaint in the Lake Superior Court, alleging a tort action for injuries

Ayah Elayyan sustained while in the pool of the Hotel Meliá Puerto Vallarta located in Peurto

Vallarta, Mexico.  On August 17, 2007, the Defendants, Sol Meliá, a company both incorporated

and with its principal place of business in Spain, and Sol Group, an entity incorporated in Delaware

with its principal place of business in Miami, Florida, removed the cause of action to the United

1

States District Court for the Northern District of Indiana pursuant to 28 U.S.C. § 1441. Removal was proper as the Court has original jurisdiction under 28 U.S.C. § 1332. On August 22, 2007, the Defendants filed a timely Answer to the Plaintiffs' Complaint and, within the Answer, reserved the right to contest personal jurisdiction.

On April 22, 2008, the Defendants each filed a Motion to Dismiss for lack of personal jurisdiction with supporting affidavits. In addition, each Defendant filed a Motion to Stay, seeking to stay the proceedings until the Court resolves the issue of personal jurisdiction.

On May 15, 2008, after the time for Plaintiffs to file a response to the Motions to Stay had passed and Plaintiffs had not done so, the Court granted the Motions to Stay. In the Order, the Court found that the time to respond to the Motions to Dismiss had also passed pursuant to Local Rule 7.1 and Federal Rule of Civil Procedure 6 and that the Motions to Dismiss were therefore fully briefed and ripe for ruling by the Court.

On May 22, 2008, the Plaintiffs filed an untimely Response to the Defendants' motions to dismiss.

On June 2, 2008, the Defendants filed a joint Reply.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## FACTUAL BACKGROUND

The following facts are based upon the allegations in the Plaintiffs' Complaint and the statements provided in the affidavits submitted by the Defendants that controvert or supplement the Plaintiffs' allegations.

2

### A.  Plaintiffs

In December 2006, the Plaintiffs, Emad, Rania, and Ayah Elayyan, who are Indiana residents, stayed at the hotel Meliá Puerto Vallarta, located in Puerto Vallarta, Mexico.  The Plaintiffs allege that on December 23, 2006, Plaintiff Ayah Elayyan was injured while in the hotel's outdoor swimming pool.

### B.  Defendants

*1.  Primary place of business*

Defendant Sol Meliá is a Spanish corporation with its principal place of business in Palma de Mallorca, Spain.  Sol Meliá directly or indirectly manages or owns hotels under a variety of brands such as "Sol," "Meliá," "ME," and "Paradisus" ("Sol-brand hotels").  All of these hotels are outside of the United States.  Sol Meliá does not own, operate, or control the premises and facilities of the Meliá Puerto Vallarta, nor is Sol Meliá responsible for the maintenance or day-to-day operations of the hotel's pool or surrounding area.

The second Defendant, Sol Group, is a Delaware corporation with its principal place of business in Miami, Florida.  Sol Group provides administrative, marketing, sales, legal, and technical services to companies associated with hotels located outside of the United States affiliated with the Sol-brand hotels.  Sol Group does not own, operate, or control the premises and facilities of the Meliá Puerto Vallarta, nor is Sol Group responsible for the maintenance or day-to-day operations of the hotel's pool or surrounding areas.

*2.  Sales and marketing activities*

Sol Meliá conducts sales, marketing, and promotional activities primarily in Europe on behalf of Sol-brand hotels.  Sol Meliá conducts few sales, marketing, and promotional activities in

the United States and does not conduct any such activities in Indiana.  Sol Meliá does not create or distribute promotional materials in the United States.  Furthermore, Sol Meliá's employees and sales representatives, who all reside outside of Indiana, do not target Indiana residents with unsolicited telephone calls, facsimiles, correspondence, or email, and Sol Meliá does not send unsolicited promotional materials to Indiana residents.

The marketing services provided by Sol Group in the United States are directed at a nationwide audience.  Sol Group creates all of its promotional materials outside of Indiana.  Sol Group does not direct its marketing to Indiana, nor does it send unsolicited promotions to Indiana residents or advertise in Indiana newspapers or publications.  Sol Group does not target Indiana residents with unsolicited telephone calls, facsimiles, correspondence, or email.

*3.  Defendants' Indiana contacts*

Neither Defendant has ever maintained an office in Indiana, nor do they have any officers, directors, shareholders, employees, sales representatives, or agents regularly or routinely present in Indiana.  Furthermore, neither Defendant is authorized to conduct business in Indiana, conducts business in Indiana, or receives any revenue from Indiana.  The Defendants do not own any real or personal property, pay taxes, or maintain an agent for service of process in Indiana.

*4.  Reservations and booking*

Neither Defendant enters into reservations or bookings with consumers.  Reservations are entered into directly with Sol-brand hotels.  Interested consumers may place reservations for Sol-brand hotels with travel agents and tour operators located in Indiana.

Sol Meliá has no contracts with tour operators or travel agents in Indiana, nor does Sol Meliá pay commissions to or control the tour operators and travel agents in Indiana who book reservations for Sol-brand hotels.

Sol Group has non-exclusive contracts on behalf of the Sol-brand hotels with independent tour operators and travel agents around the United States, none of which are located in Indiana. None of the tour operators or travel agents are employed, controlled, or paid commissions by Sol Group. Furthermore, the travel agents and tour operators do not work exclusively for Sol Group.

*5. Defendants' websites*

Each of the Defendants operates a website. Sol Meliá's website permits interested users to make reservations directly with Sol-brand hotels. Potential guests are not charged when they make a reservation through Sol Meliá's website; guests pay for their stay at the hotel and, therefore, do not pay Sol Meliá directly. Sol Meliá's website is available in nine languages and is targeted at a worldwide audience. The website is not targeted at residents in Indiana, and the word "Indiana" does not appear anywhere on the website.

Sol Group's website is targeted at its employees and professionals affiliated with Sol-brand hotels. It allows employees to access their company email and permits registered professionals to access promotional material. The website also provides company news and lists job placements at Sol Group. The website is not targeted to the public at large and is not directed to the public in Indiana. The general public cannot exchange information with Sol Group through its website.

*6. Third-party websites*

Guests are also able to make reservations with Sol-brand hotels through third-party websites, such as www.expedia.com and www.hotels.com. Sol Meliá pays commissions to certain

independent online booking services for reservations placed with Sol-brand hotels. However, Sol Meliá does not control the content of such websites, which are targeted at a worldwide audience. The online booking services are not agents of Sol Meliá nor do they work exclusively for Sol Meliá, and Sol Meliá does not control these online booking services. Furthermore, Sol Meliá does not enter into contracts with guests through these websites.

Defendant Sol Group does not use online booking services and does not pay commissions for hotel bookings from such third-party sites.

*7. Plaintiffs' hotel booking*

The Plaintiffs in this case booked their hotel stay at the Meliá Puerto Vallarta through Fantasy Travel, a travel agency located in Gary, Indiana. The Plaintiffs paid Fantasy Travel directly for their all-inclusive package prior to leaving for Mexico. The package included airfare for a flight departing from Chicago, Illinois, to Peurto Vallarta, Mexico, and accommodations at the Meliá Puerto Vallarta. Neither Defendant was involved in the reservations for or the booking of the Plaintiffs' vacation package. Neither Defendant has a contract or agency relationship with Fantasy Travel, nor did either pay a commission in connection with the Plaintiffs' reservations.

The Plaintiffs' all-inclusive vacation package was offered by Apple Vacations, a tour operator company or vacation-package wholesaler, based in Illinois. Apple Vacations entered into a non-exclusive contract with Sol Group on behalf of Bisol Vallarta, the corporation that owns the Meliá Puerto Vallarta. The contract was not negotiated, executed, or made in Indiana. Under the terms of the contract, Apple Vacations purchased an allotment of rooms at the Meliá Puerto Vallarta for the 2006-2007 year, for which Apple Vacations directly paid Bisol Vallarta. Sol Group does not

control Apple Vacations, and Apple Vacations is not Sol Group's agent.  Sol Meliá was not a party
to any contract with Apple Vacations.

## DISCUSSION

### A.  Untimely Response Brief

Northern District of Indiana Local Rule 7.1 provides:

(a) Unless the court otherwise directs, or as otherwise provided in L.R. 56.1, an
adverse party shall have fifteen (15) days after service of a motion in which to serve
and file a response, and the moving party shall have seven (7) days after service of
a response in which to serve and file a reply. Failure to file a response or reply within
the time prescribed may subject the motion to summary ruling. Time shall be
computed as provided in Fed. R. Civ. P. 6, and any extensions of time for the filing
of a response or reply shall be granted only by order of the assigned or presiding
judge or magistrate judge for good cause shown.

N.D. Ind. L.R. 7.1(a).  Local Rule 56.1, which applies to motions for summary judgment, is

inapplicable in this instance.

The Defendants filed their Motions to Dismiss pursuant to Federal Rule of Civil Procedure

12(b)(2) on April 22, 2008.  Plaintiffs' responses to the motions were due on or before May 12,

2008.  *See* N.D. Ind. L.R. 7.1(a) (allowing the adverse party fifteen days to serve and file a

response); Fed. R. Civ. P. 6(e) (providing an additional three days); Fed. R. Civ. P. 6(a)(3)

(providing that, when the last day of the period is a Saturday, as in this case, the period runs until

the end of the next day that is not a Saturday, Sunday, or legal holiday).

On May 15, 2008, in the Order granting the Motions to Stay, the Court informed the parties

that the time to respond to the Motions to Dismiss had passed and that the motions were thus fully

briefed and ripe for ruling by the Court.

On May 22, 2008, thirty days after the Motions to Dismiss were filed and ten days after the response was due, Plaintiffs filed their untimely Responses without leave of Court. Federal Rule of Civil Procedure 6(b) provides:

> (1)When an act may or must be done within a specified time, the court may, for good cause, extend the time:
>> (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or
>> (B) *on motion made after the time has expired if the party failed to act because of excusable neglect.*

Fed. R. Civ. P. 6(b) (emphasis added). Plaintiffs did not file a motion for leave to file their Responses after the deadline set by local and federal rules had expired, nor did Plaintiffs acknowledge in their Responses that the briefs were untimely. Moreover, Plaintiffs have not offered any basis for the Court to find that the untimely filing of the Responses is the result of excusable neglect. Therefore, the Court finds that Plaintiffs' Responses are untimely and strikes the Responses. The Court will rule on the merits of the Motions to Dismiss without regard to Plaintiffs' Response briefs.

### B.  Motions to Dismiss

Each of the Defendants has filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) on the basis that it is not subject to the personal jurisdiction of the Court.

Due Process mandates the dismissal of a case when personal jurisdiction is properly challenged and found to be lacking. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 315 (1945). "[O]nce a defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003); *see also Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 548 (7th Cir. 2004). When a court's

decision is based on written submissions beyond the pleadings without the benefit of a hearing, the plaintiff is only required to "make out a prima facie case of personal jurisdiction." *Purdue Research Found.*, 338 F.3d at 782 (quoting *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)). In determining whether the prima facie standard has been met, the Court resolves all disputes concerning relevant facts presented in the record in favor of the plaintiff. *Id.* (quoting *Nelson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983)).

A federal district court exercising diversity jurisdiction has personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would have such jurisdiction. *See id.* at 779; *Truck and Engine Corp. v. Dawson*, 216 F. Supp. 2d 754, 757 (N.D. Ind. 2002). In making this determination, the court must engage in a two-step analysis. *See Purdue Research Found.*, 338 F.3d at 779 (citing *Int'l Med. Group, Inc. v. Am. Arbitration Ass'n, Inc.*, 312 F. 3d 833, 846 (7th Cir. 2002)); *Ely Lilly v. Mayne Farma (USA) Inc.*, 504 F. Supp. 2d 387, 392 (S.D. Ind. 2007). First, the non-resident's activities must fall within the reach of the state's long-arm statute, and second, the exercise of jurisdiction must comport with federal constitutional due process. *See Purdue Research Found.*, 338 F.3d at 779; *see also Manez v. Bridgestone Firestone N. Am. Tire*, – F.3d –, 2008 WL 2699663, at *6 (7th Cir. 2008).

As to the first step, although Indiana Trial Rule 4.4(A) enumerates eight bases for the assertion of jurisdiction based on a defendant's actions, the rule was amended effective January 1, 2003, to provide that "a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States." Ind. R. Tr. P. 4.4(A). Therefore, the Court has personal jurisdiction over the Defendants to the limit allowed by the Due Process Clause of the

Fourteenth Amendment. *See Que Sera Promotions, Inc. v. Poughkeepsie Ford, Inc.*, No. 2:05CV38, 2005 WL 2396703, at *3 (N.D. Ind. Nov. 2, 2005).

Due Process mandates that a non-resident defendant have "certain minimum contacts with the [forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316 (internal quotations marks omitted); *see also Asahi Metal Indus. Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 113 (1987). A court must examine whether a defendant's contacts with the state are such that the defendant "should reasonably anticipate being haled into court [in the forum State]," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)), because the defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State," *id.* at 475 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

Personal jurisdiction under the due process clause may be either general or specific. *See, e.g.*, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418 (1984) (general jurisdiction); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 466-67 (1958) (specific jurisdiction). If the defendant's contacts with the forum state are significant enough to support a finding of general or specific jurisdiction, the court must then determine if the exercise of jurisdiction is consistent with traditional notions of fair play and substantial justice. *Id.* When, as here, a case involves multiple defendants, personal jurisdiction must be assessed separately as to each defendant; the plaintiff may not treat the defendants collectively. *Frontier Paper and Packaging, Inc. v. E & S Paper Co.*, 1:06-CV01485, 2007 WL 1836884, at *6 (S.D. Ind. June 22, 2007) (citing *Rush v. Savchuk*, 44 U.S. 320, 331-32 (1980)).

10

### A. General Jurisdiction

General jurisdiction permits a federal district court in Indiana to exercise personal jurisdiction over a nonresident defendant regardless of the subject matter of the litigation only when the defendant has "continuous and systematic general business contacts" with Indiana. *Purdue Research Found.*, 338 F. 3d at 787. The Seventh Circuit has explained that "[t]hese contacts must be so extensive to be tantamount to [the nonresident defendant] being constructively present in [Indiana] to such a degree that it would be fundamentally fair to require it to answer in [an Indiana court] in *any* litigation arising out of *any* transaction or occurrence taking place *anywhere* in the world." *Id*. (emphasis in original). "In general, the standard for establishing general jurisdiction is a high one." *Dawson*, 216 F. Supp. 2d at 759 (citing *Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d 1239, 1245 (7th Cir. 1990)).

Several factors are generally considered when determining if general jurisdiction can be properly exercised over a Defendant, including:

> (1) whether and to what extent the defendant conducts business in the forum state;
> (2) whether the defendant maintains an office or employees within the forum state;
> (3) whether the defendant sends agents into the forum state to conduct business;
> (4) whether the defendant advertises or solicits business in the forum state; and
> (5) whether the defendant has designated an agent for service of process in the forum state.

*Central States, Southeast and Southwest Areas Pension Fund v. Phencorp Reinsurance Co., Inc.*, 530 F. Supp. 2d 1008, 1015 (N.D. Ill. 2008) (citing *Helicopteros*, 466 U.S. at 416).

While it is unnecessary for the Defendants to have a physical presence in the state to be subject to personal jurisdiction, the Defendants' out-of-state actions must have a significant enough effect on in-state activities to satisfy the requirements of due process. *See Heritage House Rests., Inc. v. Cont'l Funding Group, Inc*., 906 F.2d 276, 283 (7th Cir. 1990). It is well-established that

merely some activity in Indiana is insufficient to establish jurisdiction. *See, e.g.*, *Purdue Research Found.*, 338 F.3d at 787 (holding that defendant's several confidentiality agreements with Indiana corporation and a few visits to Indiana in furtherance thereof were "simply insufficient to satisfy the demanding standard set forth . . . in *Helicopteros*"); *U.S. Sch. of Golf, Inc. v. Biltmore Golf, Inc.*, 2005 WL 3022005, at *3 (S.D. Ind. Nov. 10, 2005) (holding that foreign defendant's multi-year business relationship with Indiana corporation, communications with Indiana corporation in Indiana, provision of services to Indiana residents, and maintenance of website available to Indiana residents were "obviously far too modest to support general jurisdiction"); *L.H. Carbide Corp. v. Piece Maker Co.*, 852 F. Supp. 1425, 1434 (N.D. Ind. 1994) (holding that contacts were not of the quality or quantity necessary to enable general jurisdiction over the non-resident defendant despite sales to Indiana customers amounting to 8% of total annual sales and one employee's visits to Indiana every two to three months and his calls to Indiana customers). This is because the Defendants are entitled to a "fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign." *Burger King*, 471 U.S. at 472.

In this case, the Defendants do not have any officers, directors, shareholders, employees, sales representatives, or agents regularly or routinely present in Indiana. The Defendants do not own real or personal property or maintain an office or business operations in Indiana. They do not have bank accounts or other financial accounts, file taxes, or maintain a registered agent for service of process in Indiana. However, the Plaintiffs allege in their Complaint that exercising personal jurisdiction over the Defendants is consistent with due process because the Defendants are conducting continuous and systematic business in Indiana by: (1) maintaining employees, agents, tour operators, and travel agents in Indiana who make bookings for Sol-brand hotels; (2) regularly

12

entering into contracts with parties located in Indiana, including bookings, and reservations for Sol-brand hotels; (3) owning or operating hotels around the world that are stayed in by Indiana residents who visit Sol-brand hotels around the world; and (4) promoting Sol-brand hotels through the distribution of materials in Indiana and through internet websites. The Court will consider each of these in turn to determine whether the Defendants' activities within Indiana are significant enough to satisfy the requirements of due process.

*1. Maintenance of employees and agents in Indiana*

The Plaintiffs allege in their Complaint that the Defendants conduct business in Indiana through agents and employees who book lodging and hospitality accommodations, communicate with Indiana residents via telephone, facsimile, or email, and promote the Sol Group's services to Lake County, Indiana residents. Both Defendants offer evidence to refute this allegation.

a. Employees

Sol Meliá does not have any employees or sales agents regularly or routinely present in Indiana. Sol Meliá is a Spanish company that primarily conducts its sales and marketing activities in Europe. None of Sol Meliá's employees work or reside in Indiana. While it is not necessary for the Defendants to have a physical presence in Indiana to be subject to jurisdiction, "contacts that are random, fortuitous, or attenuated will not be sufficient to establish the exercise of that state's jurisdiction." *Burger King*, 471 U.S. at 475. Where solicitation is concerned, the non-resident defendants must initiate, maintain, or direct their communications to residents of the forum state to establish minimum contacts with that state. *See Oxford Commercial Funding v. SDI Le Grand Pub, Inc.*, 2002 WL 1611576, at *5 (N.D. Ill. July 19, 2002). Sol Meliá targets the European market and does not create or distribute any promotional materials in the United States. Sol Meliá does not

13

target Indiana residents with unsolicited telephone calls, facsimiles, correspondence, or emails. Therefore, any contacts that Sol Meliá's employees had with Indiana are random and fortuitous. Thus, the activities conducted by Sol Meliá's employees do not provide the continuous and systematic contacts with the forum state required to exercise general jurisdiction.

Although Sol Group is located in the United States, all of Sol Group's employees reside and work outside of Indiana. Sol Group's primary place of business is Miami, Florida. Sol Group has no employees regularly or routinely present in Indiana. Sol Group does not create any promotional materials in Indiana. Furthermore, the out-of-state activities conducted by Sol Group's employees are too attenuated to warrant the exercise of jurisdiction over Sol Group. Sol Group and its employees did not target Indiana residents with unsolicited telephone calls, facsimiles, correspondence, or email. More specifically, Sol Group did not send any unsolicited promotional materials to Indiana residents. Sol Group did not initiate any contacts with Indiana or maintain ongoing business relationships with Indiana residents. Rather, Sol Group targeted a nationwide audience with its sales and marketing promotions for Sol-brand hotels. Therefore, the activities conducted by Sol Group's employees within the forum state are not directed at Indiana and are too attenuated to serve as the basis for jurisdiction. *Compare Heritage House*, 906 F.2d at 284 (holding that the defendant's out-of-state activities were sufficient to warrant the exercise of jurisdiction since the defendants initiated the contacts and maintained ongoing relationships with the forum state). Thus, personal jurisdiction cannot be asserted over the Defendants based upon activities of their employees within the forum state.

b.  Independent travel agents

Although independent travel agents and tour operators promote the Sol-brand hotels, "sales and sales promotion activities through independent nonexclusive sales representatives are not enough by themselves to subject an out-of-state company to local jurisdiction in actions unrelated to those activities."  *Slurry Sys., Inc. v. Berminghammer Found. Equip.*, No 2:04CV456, 2005 WL 2240064, at *4 (N.D. Ind. Sept. 14, 2005) (citing *Congoleum Corp. v. DLW Altiengesellchaft*, 729 F.2d 1240 (9th Cir. 1984)); *see also Schmidt v. Esquire, Inc*., 210 F.2d 908, 916 (7th Cir. 1954) (holding that foreign publishing company was not doing business in Indiana based on activities of representatives that were under no supervision, direction, or control of defendant and performed function of soliciting subscriptions on commission basis).  Independent sales representatives are not under the control or supervision of the party whose products they are promoting.  *See Walker v. Martin*, 887 N.E.2d 125, 131 (Ind. Ct. App. 2008).  For example, sales "representatives work for any number of companies at the same time, are paid purely based on the results they obtain, and operate their own businesses with their own expenses."  *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc*., 42 F.3d 1421, 1436 (3d Cir. 1994); *see also Walker*, 887 N.E.2d at 132-33.

Sol Meliá does not employ or have a contract with any travel agents or tour operators located in Indiana.  Sol Meliá does not pay commissions to agents who book reservations for Sol-brand hotels or exercise control over such agents.  Therefore, the activities conducted by travel agents and tour operators who promote Sol-brand products within Indiana cannot be attributed to Sol Meliá to establish jurisdiction.  To the extent that Plaintiffs may be alleging that any of Sol Meliá's direct or indirect subsidiaries that operate under the Sol brand names have continuous and systematic business contacts in Indiana, Sol Meliá is not responsible for the business contacts of those entities.

*See Central States Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 944 (7th Cir. 2000) (holding that when corporate formalities have been observed and a parent does not dominate the subsidiary, the parent and subsidiary are two separate entities for purposes of jurisdiction). Thus, the Court declines to exercise personal jurisdiction over Sol Meliá based on the activities of travel agents and tour operators within Indiana.

Sol Group has non-exclusive contracts with travel agencies and tour operators who book reservations for Sol-brand hotels. However, the travel agents and tour operators do not exclusively promote Sol-brand products, nor are they under the direction or control of Sol Group. Therefore, these agents and operators are independent sales representatives. Because the activities of independent sales representatives cannot establish personal jurisdiction over a non-resident defendant, the Court cannot exercise jurisdiction over Sol-Group based on the activities of travel agents and tour operators within Indiana.

Furthermore, working nationwide with independent vacation co-op partners is insufficient to establish jurisdiction over a non-resident defendant. *See Breschia v. Paradise Vacation Club, Inc.*, No. 02 C 3014, 2003 WL 22872128, at *4 (N.D. Ind. Dec. 4, 2003). Therefore, jurisdiction cannot be based on the activities conducted by nationwide vacation co-op partners, such as Apple Vacations, with whom Sol Group maintains a business relation and Sol Meliá has no relation.

*2. Contractual relationships*

The Plaintiffs also allege in their Complaint that the Defendants' contractual relationships with parties located in Indiana demonstrate continuous and systematic business in the state. The Plaintiffs allege that the Defendants have entered into joint ventures or contracts with agents, employees, vendors, service providers, customers, and hotel guests located in Lake County, Indiana,

and that the Defendants routinely and regularly entered into contracts with people who reside in Lake County, Indiana. The evidence offered by the Defendants belies these allegations.

Neither Defendant has entered into a reservation or booking with an Indiana resident. Reservations and bookings are entered into directly with Sol-brand hotels, not with the Defendants.

Neither Defendant has entered into any contracts or joint ventures with employees, vendors, or service providers in Indiana. Furthermore, Sol Meliá was not a party to any contracts with travel agents, tour operators, or vacation co-op partners. Although Sol Group has non-exclusive sales contracts with travel agents and tour operators, all of these companies are located outside of Indiana. None of these contracts were formed or negotiated in Indiana. The Court cannot exercise general jurisdiction over Sol Group based upon contracts that were not formed, negotiated, or entered into in Indiana or that did not involve an Indiana resident. Such out-of-state contracts are unrelated to Sol Group's activities in Indiana and do not support a finding that Sol Group had continuous and systematic contacts with Indiana. Thus, general jurisdiction cannot be exercised over the Defendants based upon their contractual relations.

3. *Deriving revenue from hotel and resort guests*

The Plaintiffs allege that the Court has general jurisdiction over the Defendants because the Defendants operate and manage hotels stayed in by residents of Lake County, Indiana. The Plaintiffs contend that the Defendants derive significant revenue from the travelers who stay, dine, and shop at the Defendants' hotels and resorts. Based on the evidence submitted, this basis for general jurisdiction must fail.

Sol Group does not own any Sol-brand hotels and, therefore, does not derive any revenue from guests residing in Indiana who visit, dine, or shop at Sol-brand hotels.

17

Any monetary benefit Sol Meliá may derive from the expenditures of Indiana residents at Sol-brand hotels is based on the unilateral activities of Indiana residents.  A defendant cannot be haled into a jurisdiction "solely as the result . . . of the unilateral activity of another party or third person."  *Burger King*, 471 U.S. at 475; *see also Zaccaria v. Baby Grand Corp.*, No. 85 C 6678, 1986 WL 10773, at *1 (N.D. Ill. Sept. 18, 1986) (finding no personal jurisdiction over a nonresident hotel that had guests from the forum state).  Here, the Plaintiffs' allegations are not based upon the Indiana activities of Sol Meliá but rather the out-of-state activities of Indiana residents.  Therefore, any monetary benefits derived from the activities of Indiana guests at Sol-brand hotels, none of which are located in Indiana, are insufficient to establish jurisdiction over Sol Meliá in this case.

*4.  Marketing*

Finally, the Plaintiffs contend that Sol Group is doing continuous and systematic business in Indiana through marketing and promotional efforts.  Specifically, the Plaintiffs allege in the Complaint that the Defendants promote their many world-wide hotel and resort properties to guests who reside in Lake County, Indiana, through the aggressive dissemination of promotional materials, through Sol Meliá's own website from which Sol Meliá solicits direct bookings, and through online booking services provided by third-party websites to whom the Defendants pay bookings.

a.  Promotional material

To establish jurisdiction based upon the dissemination of advertisements and promotional materials, a defendant's marketing efforts must be directed at the forum state or entail additional contacts with that state.  *See Carr v. Pouilloux*, 947 F. Supp. 393, 398 (C.D. Ill. 1996) (citing *Asahi*, 480 U.S. at 111-12); *Breschia*, 2003 WL 22872128, at *4.  General jurisdiction cannot be based on nationwide advertising alone.  *See Szakacs v. Anheuser-Busch Cos., Inc.*, 644 F. Supp. 1121, 1124-

18

25 (N.D. Ind. 1986) (finding no general jurisdiction when defendant's only contact with Indiana was

its nationwide advertising campaign); *Harold Howard Farms v. Hoffman*, 585 N.E.2d 18, 21 (Ind.

Ct. App. 1992) (holding that trial court erred in finding that Indiana acquired personal jurisdiction

over Michigan defendant based on national advertisement).   Courts have refused to find general

jurisdiction when the defendant's only contact with the forum state was from a nationwide

advertising campaign unless the defendant had additional contacts with the state through such

activities as distributing products or personally contacting residents within the forum state.   *See*

*Szakacs*, 644 F. Supp. at 1125.  Absent these additional contacts with the forum state, a defendant

could not reasonably anticipate being haled into court in that state.   *Id.*

Sol Meliá does not aggressively disseminate promotional materials in Indiana.  Sol Melia's

marketing and promotional activities on behalf of Sol-brand hotels are targeted at Europe, not

Indiana.  Sol Meliá does not create or distribute promotional materials in the United States, nor does

it send unsolicited promotional materials to Indiana residents.   Sol Meliá does not advertise in

Indiana newspapers or publications.  Furthermore, any advertising that Sol Melia does conduct in

the United States is targeted nationwide.   Therefore, Sol Meliá's promotional activities within

Indiana are insufficient to warrant the exercise of general personal jurisdiction over it.

Sol Group's marketing and promotional activities on behalf of the Sol-brand hotels are

targeted nationwide.  Sol Group does not direct its marketing efforts to Indiana, nor does it send

unsolicited materials to Indiana residents or advertise in Indiana newspapers.  Sol Group does not

have personal contact with consumers who desire to stay at a Sol-brand hotel, nor does the record

show that they send products into Indiana.   There is no other evidence in the record of contacts

between Sol Group and Indiana beyond the nationwide advertising, such as distributing a product

within Indiana or personal contact with a plaintiff in the forum.  *See Szakacs*, 644 F. Supp. at 1125 (citing cases).  Therefore, Sol Group could not reasonably anticipate being haled into court in Indiana, and the Court cannot exercise general jurisdiction over Sol Group based upon its nationwide advertising campaign alone.

b.  Website

Each Defendant operates a website, and each website is maintained for a different purpose. A court's ability to exercise personal jurisdiction based upon the maintenance of a website is dependent on the level of interactivity between the consumer and the operator.  *See Litmer v. PDQUSA.com*, 326 F. Supp. 2d 952, 957 (N.D. Ind. 2004).  The mere fact that a state's resident can access a defendant's website does not subject a nonresident defendant to general jurisdiction in that state.  *Id*. at 956.  "Premising personal jurisdiction on the maintenance of a website, without requiring some level of 'interactivity' . . . would create almost universal personal jurisdiction because of the virtually unlimited accessibility of websites across the country."  *Jennings*, 383 F.3d at 550.  Therefore, "the likelihood that personal jurisdiction can be exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet."  *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997).

To determine whether personal jurisdiction can be properly exercised, this Court has adopted the three-step sliding scale test established in *Zippo*.  *See Litmer*, 326 F. Supp. 2d at 956-57.  At one end of the scale are "passive websites."  *Aero Indus., Inc. v. DeMonte Fabricating, Ltd.*, 396 F. Supp. 2d 961, 968 (S.D. Ind. 2005).  A passive website is one that only provides "contact information and descriptions of its various product lines, but [does] not enable customers to order products online."  *U.S. Sch. of Golf*, 2005 WL 3022005, at *6.  Contacts with the forum state

through a passive website are insufficient to establish general jurisdiction. *Jennings*, 383 F.3d at 550. At the other end of the sliding scale are "transactional websites," through which defendants enter into contracts and conduct highly commercial business activities with residents of the forum state. *Id.*; *see also Aero Indus.*, 396 F. Supp. 2d at 968. The exercise of personal jurisdiction is proper in such cases. *Litmer,* 326 F. Supp. 2d at 957. Located in the middle of the sliding scale are "interactive websites," which allow users to exchange information with the operator but do not allow contracts to be entered into by the user and operator of the website. *Id.* For interactive websites, "the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the [website]." *Id.* (quoting *Zippo*, 952 F. Supp. at 1124).

Sol Group maintains a passive website. Sol Group's website allows employees to access their email, lists job placements, and posts company news. The website does not permit the general public to exchange any information with Sol Group. Given the lack of interactivity between the consumer and the website, Sol Group's website does not provide a basis for general jurisdiction.

Sol Meliá operates an interactive website, located in the middle of the sliding scale test. Sol Melia's website does not allow contracts to be formed over the website, but it does allow consumers to place reservations. However, courts have consistently refused to exercise jurisdiction based solely on the fact that reservations can be placed and paid for through a hotel's website. *See Breschia*, 2003 WL 22872128, at *1 (finding that personal jurisdiction could not be exercised even though the hotel's website allowed reservations to be placed, allowed consumers to save ten percent by providing information, charged the deposit to the consumer's credit card, and required consumers to accept the company's policies) (citing *Arriaga v. Imperial Palace, Inc*. 252 F. Supp. 2d 380, 384-

21

87 (S.D. Tex. 2002)); *Bell v. Imperial Palace Hotel/Casino, Inc*., 200 F. Supp. 2d 1082, 1092 (E.D. Mo. 2001) (finding that the exercise of general jurisdiction over the defendant was improper based solely on the defendant's website that accepted reservations); *Forrester v. Seven Seventeen HB St. Louis Redev. Corp*., 784 N.E.2d 834, 840 (Ill. Ct. App. 2002). Courts treat hotel websites that allow the placing of reservations similarly to other forms of national advertising, such as toll-free reservation hotlines, which are themselves insufficient to establish general jurisdiction. *See, e.g.*, *Bell*, 200 F. Supp. 2d at 1088; *Forrester*, 784 N.E.2d at 840. Sol Meliá's website allows customers to contact Sol Meliá to make reservations, which is not qualitatively different from an advertisement in another medium that provides a toll-free number for reservations. *Id.* Therefore, it is improper to assert general jurisdiction over Sol Meliá based solely upon the ability of its website to take reservations.

Furthermore, consumers placing reservations through Sol Meliá's website do not pay Sol Meliá directly. Payment is completed directly with the hotel. Sol Meliá's website simply makes the products and services available to the consumer, which alone is not enough to establish jurisdiction without purposeful targeting. *See U.S. Sch. of Golf*, 2005 WL 3022005, at *6. For personal jurisdiction to be established through the maintenance of a website, the defendant must direct its business activities toward consumers in the forum state. *Jennings*, 383 F.3d at 549-550. Moreover, "there is no case where general jurisdiction was conferred on the basis of an interactive website in the absence of non-website factors evidencing intent for a defendant's product or website to reach a particular state." *U.S. Sch. of Golf*, 2005 WL 3022005, at *4; *see also Infosys Inc. v. Billingnetwork.com, Inc.*, No. 03 C 3047, 2003 WL 22012687, *4 (N.D. Ill. Aug. 27, 2003) (general jurisdiction does not exist because of the absence of any non-website activities directed at the state).

22

Sol Meliá's website is available in nine languages, evidencing Sol Meliá's intent to reach a worldwide audience. The website contains no evidence that it is targeted at Indiana. Furthermore, Plaintiffs have not identified any other activities evidencing the Defendants' intent to target Indiana. Therefore, the Court cannot exercise general jurisdiction over Sol Meliá based solely upon the maintenance of an interactive website.

c.  Third-party websites

The Plaintiffs also contend that the Court can exercise jurisdiction over the Defendants based on third-party websites, such as www.hotels.com and www.expedia.com, which allow reservations to be placed at Sol-brand hotels.

Sol Group does not use, pay commissions to, or have contracts with third-party websites. Therefore, Sol Group cannot be subject to general personal jurisdiction based on the activities of third-party websites that permit reservations to be placed at Sol-brand hotels.

Sol Meliá, however, does pay commissions to third-party websites for reservations placed at Sol-brand hotels. This relationship is analogous to the Defendants' relationships with travel agents and tour operators since the third-party websites operate as independent sales agents. Independent sales agents maintain their own businesses, are paid according to the results they produce, promote products for various companies, and are not under the control or direction of the companies whose products they are promoting. *Am. Tel. & Tel.*, 42 F.3d at 1436; *Walker*, 887 N.E.2d at 132-33. Sol Meliá does not have an exclusive contract with or exercise control over the third-party websites. Moreover, Sol Meliá pays the third-party websites according to the results they produce. Therefore, the third-party websites operate as independent sales agents.

The Court has already established that "sales and sales promotion activities through independent nonexclusive sales representatives are not enough by themselves to subject an out-of-state company to local jurisdiction in actions unrelated to those activities." *Slurry Systems*, 2005 WL 2240064, at *4; *Zaccaria*, 1986 WL 10773, at *1.  Without more, such as direct shipments to customers in the forum state–which is not the case in this matter, general jurisdiction over Sol Meliá cannot be based upon the functions of third-party websites.  *See Slurry Systems*, 2005 WL 2240064, at *4.

*5.  Conclusion*

Therefore, Plaintiffs have failed to make a prima facie showing of general jurisdiction over the Defendants in this case because there is no evidence that the Defendants' contacts with the State of Indiana are continuous and systematic.

**B. Specific Jurisdiction**

Having found that the Court lacks general personal jurisdiction over the Defendants, the Court turns to the issue of specific jurisdiction.  An Indiana court may exercise specific jurisdiction only when the nonresident defendant purposefully availed itself of the privilege of conducting activities within Indiana and the plaintiff's claims arise out of the defendant's contacts with Indiana. *See LinkAmerica Corp. v. Albert*, 857 N.E.2d 961, 967 (Ind. 2006) (citing *Helicopertos*, 466 U.S. at 414).

Purposeful availment exists only when a nonresident defendant has deliberately engaged in significant activities within the forum state or has created continuing obligations between itself and a resident of the forum state.  *See Purdue Research Found.*, 338 F.3d at 780-81; *Slurry Systems*, 2005 WL 2240064, at *6.  In this analysis, the focus is on the defendant's activities within the forum

24

state, not on those of the plaintiff. *See Purdue*, 338 F. 3d at 780 (citing *Burger King*, 471 U.S. at 474; *World-Wide Volkswagen*, 444 U.S. at 298).  The purposeful availment analysis "ensures that a defendant's amenability to jurisdiction is not based on fortuitous contacts, but on contacts that demonstrate a real relationship with the state *with respect to the transaction at issue*." *Id*. (citing *Burger King*, 471 U.S. at 474) (emphasis added).  In this case, each Defendant lacks significant contacts with Indiana, and, more importantly, the instant action does not arise out of any of either Defendant's contacts with Indiana.

Specific jurisdiction does not exist unless a plaintiff's claim evidences a real relationship with the state with respect to the transaction at issue.  *Purdue Research Found.*, 338 F.3d at 780 (citing *Burger King*, 471 U.S. at 475).  This requirement is satisfied only if the plaintiff can show that the controversy is "related to or arises out of the defendant's contacts with the forum state." *LinkAmerica*, 857 N.E.2d at 967 (citing *Helicopteros*, 466 U.S. at 414); *see also Rieke Corp. v. Am. Flange & Mfg. Co., Inc*., No. 1:06-CV-275, 2007 WL 1724897, at *3 (N.D. Ind. June 12, 2007).

*1.  Sol Group*

Sol Group does not maintain offices or have employees, tour operators, or travel agents located in Indiana and has no contractual relations with Indiana.  The only contacts Sol Group has with Indiana are the maintenance of a passive website and nationwide marketing services.  Sol Group's website is targeted solely at Sol Group's employees and professionals affiliated with the hotels located outside the United States.  This maintenance of a passive website not targeted at Indiana residents but accessible by individuals within Indiana does not constitute purposeful availment.  *See, e.g.*, *Infosys*, 2003 WL 22012687, at *5.  Moreover, Plaintiffs have not alleged that Plaintiff Ayah Elayyan's injuries sustained while in the outdoor swimming pool of the hotel Meliá

Puerto Vallarta, located in Puerto Vallarta, Mexico, arose out of Sol Group's maintenance of this passive, nonpublic website.

As for Sol Group's nationwide marketing services, Sol Group creates all of its promotional materials outside of Indiana. Sol Group does not direct its marketing to Indiana, nor does it send unsolicited promotions to Indiana residents or advertise in Indiana newspapers or publications. Sol Group does not target Indiana residents with unsolicited telephone calls, facsimiles, correspondence, or email. More specifically, there are no allegations or evidence that Sol Group sent promotional or marketing materials to Plaintiffs or that Plaintiffs viewed or relied on Sol Group's promotional or marketing materials in making or booking their vacation plans. Therefore, specific personal jurisdiction over Defendant Sol Group cannot be predicated on Indiana contacts. *See Szakacs*, 644 F. Supp. at 1124.

However, even if Plaintiffs had viewed or relied on Sol Group's promotional or marketing materials, the Court would still lack specific personal jurisdiction over Sol Group. Plaintiff's Complaint alleges that Sol Group "had a duty to plaintiff to exercise ordinary care to maintain the hotel and its premises and amenities including the pool, so it was reasonably safe for those guests using the facilities at the hotel," and that as a direct and proximate result of the breach of that duty by Sol Group, Ayah Elayyan was injured. Pl. Cmplt., Count II, ¶¶ 8-10. There are no allegations of false advertising or any other legal claim arising out of Sol Group's promotional or marketing materials. Therefore, Plaintiffs' personal injury tort claim occurring in Mexico did not arise out of Sol Group's promotional or marketing activities in Indiana, and the Court does not have specific personal jurisdiction over Defendant Sol Group. *See Szakacs*, 644 F. Supp. at 1124 (holding that plaintiff's slip and fall claim occurring at a Florida tourist attraction did not arise out of the

defendant's Indiana advertisements since the Plaintiffs did not allege that the defendants were guilty of false advertising which they then relied upon to their detriment).

Not to be overlooked, Plaintiffs allege in paragraph 6 of Count II of their Complaint that they entered into a contract with Sol Group, by its agent Apple Vacations. However, the evidence demonstrates that Apple Vacations is not Sol Group's agent. The Plaintiffs' all-inclusive vacation package was offered by Apple Vacations, a tour operator company or vacation-package wholesaler, based in Illinois. Apple Vacations entered into a non-exclusive contract with Sol Group on behalf of Bisol Vallarta, the corporation that owns the Meliá Puerto Vallarta. The contract was not negotiated, executed, or made in Indiana. Under the terms of the contract, Apple Vacations purchased an allotment of rooms at the Meliá Puerto Vallarta for the 2006-2007 year, for which Apple Vacations directly paid Bisol Vallarta. Notably, Sol Group does not have an exclusive contract with Apple Vacations or exert control over Apple Vacations' operations. Moreover, Sol Group cannot be subject to the Court's jurisdiction based upon the activities of a nationwide "vacation co-op," such as Apple Vacations. *Breschia*, 2003 WL 22872128, at *4. Finally, the Plaintiffs' booked their hotel stay at the Meliá Puerto Vallarta through Fantasy Travel and paid Fantasy Travel directly for their all-inclusive package prior to leaving for Mexico. Sol Group has no relationship with Fantasy Travel.

Accordingly, the Court does not have specific personal jurisdiction over Sol Group.

*2. Sol Meliá*

As with Sol Group, Sol Meliá does not maintain offices or have employees, tour operators, or travel agents located in Indiana and has no contractual relations with Indiana. Sol Meliá has no contracts with tour operators or travel agents in Indiana, nor does Sol Meliá pay commissions to or

control the tour operators and travel agents in Indiana who book reservations for Sol-brand hotels. Sol Meliá's promotional and advertising activities targeted the European market.

The only contact Sol Meliá has with Indiana that could potentially constitute purposeful availment is the maintenance of its interactive website that is available for use in Indiana. As noted above, a website does not satisfy the purposeful availment test when there is no evidence that the website was specifically targeted at the forum's residents. *See Infosys*, 2003 WL 22012687, at *5 (holding that a defendant had not purposefully availed itself of the forum state with its interactive website when there were no allegations that the website was specifically targeted at forum residents or that forum residents had "initiated any actual or potential business relationships" with defendant). Sol Meliá's website is accessible worldwide and available in nine languages, evidencing its intent to target a worldwide audience, not specifically Indiana. However, because an individual Indiana resident could book a reservation through Sol Meliá's website in Indiana, it is conceivable that such a contact may constitute purposeful availment for the purposes of specific jurisdiction *if* the individual used the website and *if* the alleged injury then arose out of that individual's use of the website. *See id*. Neither contingency is present in this case. Here, there is no allegation that Plaintiffs made their reservation through Sol Meliá's website; rather, the Complaint alleges that Plaintiffs entered into a contract with Apple Vacations for the vacation at issue. Sol Meliá is not a party to any contract with Apple Vacations. Therefore, there is no connection between Sol Meliá's contacts with Indiana and Plaintiffs' injuries, and the alleged injuries could not have arisen out of Sol Meliá's contacts with Indiana.

More importantly, even if Plaintiffs had made their hotel reservation in Indiana through Sol Meliá's interactive website (the sole Indiana contact), the Court would nevertheless lack specific

jurisdiction over Sol Meliá.   As with Sol Group, Plaintiff's Complaint alleges that Sol Meliá "had a duty to plaintiff to exercise ordinary care to maintain the hotel and its premises and amenities including the pool, so it was reasonably safe for those guests using the facilities at the hotel," and that as a direct and proximate result of the breach of that duty by Sol Meliá, Ayah Elayyan was injured.  There are no allegations in the Complaint related to the booking of the hotel such as breach of contract or that the Plaintiffs' injuries sustained in Mexico occurred as the result of Sol Meliá's website or the booking of the reservation.  Therefore, even if Plaintiffs had booked their reservation in Indiana through Sol Meliá's website, the tort claim occurring in Mexico could not have arisen out of any such reservation.  *See Szakacs*, 644 F. Supp. at 1124.

Accordingly, the Court does not have specific personal jurisdiction over Sol Meliá.

## CONCLUSION

Because Plaintiffs' Responses were not timely filed, the Court hereby **STRIKES** (1) Plaintiff's Response to Defendant Sol Group's Motion to Dismiss [DE 23] and (2) Plaintiff's Response to Defendant Sol Meliá's Motion to Dismiss [DE 24].

As set forth in this Order, the Court has neither general nor specific personal jurisdiction over either Defendant; therefore, the Court hereby **GRANTS** (1) Defendant the Sol Group Corporation's Motion to Dismiss [DE 16] and (2) Defendant Sol Meliá, S.A.'s Motion to Dismiss [DE 19].  The Court **ORDERS** that Plaintiffs' Complaint is **DISMISSED without prejudice** as to both Defendants.

All pretrial and trial dates are **VACATED**.

SO ORDERED this 24th day of July, 2008.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:  All counsel of record